Robishaw v. The Schiller Piano Co., 179 Ill. App. 163.

# David M. Robishaw, Appellant, v. The Schiller Piano Company, Appellee.

## Gen. No. 5,642.

1. Master and servant—*duty to guard machinery.* Under the statute, an employer is required to properly protect or guard a circular saw.

2. Master and servant—*duty to guard machinery.* In an action for personal injuries alleged to have resulted from the negligence of defendant in not properly guarding a saw in its piano factory, a verdict for the defendant is sustained where there is a preponderance of evidence that the saw was as properly guarded as could be and be operated.

3. Master and servant—*testimony of foreman as to what might be done by employe.* In an action for personal injuries received by plaintiff while operating a saw in defendant's piano factory, it is not error to admit testimony of the foreman that plaintiff's time went on the same whether he was removing scraps or operating the saw.

4. Evidence—*when opinion based on experience is competent.* In a personal injury action where plaintiff was injured while operating a saw in defendant's piano factory, a witness who has sufficient experience may give his opinion regardless of the time or place where he worked.

5. Evidence—*when demonstrative evidence refused at close of rebuttal testimony.* In a personal injury action where plaintiff's counsel at the close of his rebuttal testimony asks that plaintiff may show his hand to the jury for inspection, the character and extent of the injury having been fully covered in the original testimony, an objection to the offer is properly sustained.

6. Evidence—*suggestive questions on rebuttal.* On rebuttal there is no more right to ask suggestive questions of one's own witness than on examination in the first instance.

7. Instructions—*when party cannot complain of error.* A party cannot complain of error in instructions when the same error is found in the instructions of the complaining party.

8. Master and servant—*effect of failure to comply with statute regarding protection of machinery.* An instruction in a personal injury action that if the jury believe from a preponderance of the evidence that defendant failed to protect its saw as required by statute, then the defendant cannot interpose the common law defense of assumption of risk, is properly refused.

9. New trial—*surprise by certain testimony.* A motion for new trial on the ground that plaintiff was surprised by certain testimony

is properly denied where a continuance on such ground was not asked during the trial.

10. NEW TRIAL—*cumulative evidence.* Cumulative evidence as to the extent of plaintiff's injuries cannot be considered on a motion for new trial in a personal injury action where the jury found defendant guilty of no negligence.

11. NEW TRIAL—*on the ground that plaintiff appeared in court intoxicated.* Plaintiff's motion for new trial on the ground that he appeared in court under the influence of liquor is properly refused.

Action in case for personal injuries. Appeal from the Circuit Court of Ogle county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed Novmber 13, 1912.

BERT S. DUZAN, for appellant.

J. C. SEYSTER, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the court.

Appellant was employed as a wood worker in the mill of appellee, and while operating a sawing machine therein was injured. He brought this suit to recover for injuries received, and his declaration charged that while in the exercise of due care and caution for his own safety, and while in the line of his duty, he had his hand injured while removing accumulated waste behind the saw he was operating by reason of the negligence of appellee in not guarding said saw; that it was the duty of appellee to properly guard the saw, one count of the declaration charging a general duty, and two counts charging appellee's duty under the statute.

The sole act of negligence alleged in each count was that of not guarding the saw.

The duty of an employer under the statute is to properly protect, or guard machinery, in this case the saw. Hurd's R. St. 1909, p. 1152.

The complaint made is that the saw was not properly protected or guarded. In the different counts the phraseology varies, but that is the gist of the charges in each count; so, at the very out-set of the

trial the attention of the jury must have been prominently directed toward the question, was the saw properly guarded or protected. Whether under the general charge of lack of protection, which might create a liability at common law, or under the statutory requirement, that the saw be protected, it became important to determine whether the saw was *properly* protected, because at common law there would be a liability if the saw was not properly protected, if appellant was in the exercise of ordinary care for his own safety, and under the Statute, the word "properly" is made the test of liability, and we can, for the time being, leave out of consideration for further discussion, the question of assumed risk and contributory negligence, and examine the allegations of the declaration, and the evidence in the case, of neglect to comply with the statute to determine whether or not the saw was *properly* guarded. If the jury believed from the evidence that the saw was properly guarded, then, whether appellant was in the exercise of ordinary care, or whether he assumed the risk incident to his employment, is wholly immaterial, because in that event appellee would not be guilty of the negligence charged in any count of the declaration. In other words, it was necessary for appellant to prove exactly the same thing either at common law, or under the statute, viz: that the saw was not properly guarded, so far as negligence of appellee is concerned.

The evidence is undisputed that at the time appellant received his injuries, he was beveling bottom boards for pianos, beveling them on two sides and two ends. Appellant testified that the saw was not guarded as it could have been, and he tells how it could have been guarded. The witness Swank testified he was a factory inspector and that such a saw could be guarded, but on cross-examination he said, "I don't know of any guard that could be used in beveling bottom boards very handy, at least I don't know of any." "The kind of saw that I saw used with guards on was

used where the boards laid flat on the table, and run through the saw lying flat on the table. They have guards that can be put on the saw for those." Appellant offered no further evidence on the subject of guarding the saw.

The witness Olean for appellee testified he was a machinist for several years; was foreman of the Haddorf Piano Company for nine years; was in business for himself at the time he testified that he was familiar with machinery, and knew the kind that is used for beveling bottom boards; knew the saw of appellee; knew the process of beveling bottom boards; did not know of any guard or protection that would not be in the way when doing that work; had made observation of different factories he had worked in, and had seen others; that he did not know of any mechanism that could be used as a protector at the top of the saw in beveling bottom boards; that it was impossible to put a guard on the top of the saw when they were beveling.

The witness Norden for appellee testified that he was the foreman of the finishing room for appellee for seven years, and had worked in the finishing room for thirty-five years; that appellant was beveling bottom boards when he was injured; that bottom boards are beveled on two ends and two edges; that bottom boards are eleven and one-half or twelve inches wide, and four feet ten inches long, and when they are beveling are held to the saw at an angle of sixty degrees to make the bevel; that he does not know of any way to put a guard on the saw to protect it when beveling bottom boards; that in his judgment it cannot be done; and that it would be no protection in case of beveling bottom boards to put a spreader on; and that if a guard were put on the saw it could not be used because it would be in the way.

The witness Swank, the factory inspector, for appellee, testified that he had seen the bottom board

which he referred to; that in his opinion there could not be a guard placed upon that kind of a saw for beveling that kind of a board, unless it was a tilted table, but even then it could not be used to bevel the ends of the boards; that a spreader could not be used very handy in beveling bottom boards; that it would not be any safety or protection on account of the pieces taken off. On cross-examination the witness Swank said he had seen a trim saw upon a tilted table, and with this they can bevel bottom boards at the end and that the ends could be beveled on a shaper. The witness Reed testified for appellee that he had been working for two years at saws for appellee, and had worked on a trim saw a good deal the last six or eight months, and beveled bottom boards on it; that he did not believe a spreader could be used on the saw for beveling bottom boards. The witness Peterson for appellee testified that for eleven years he had been working for appellee, and for six years beveled bottom boards; that he does not think a guard could be used on the saw for that work. The witness Boos testified for appellee that he had worked for appellee nine years, and was running a trim saw; that he used it mostly for ripping and cutting; that bottom boards were beveled on it; and that he had worked long enough at it to have an opinion whether it is practical to have a guard on the saw; and in his judgment a guard could not be used on the saw while beveling bottom boards; that he used a spreader about two days on a circular saw, and that in his judgment a spreader would be no protection. The witness Ewing testified for appellee that he was a machine hand, and had run a trim saw, and that he did that work for the Schaffer Piano Company for six years; that he had tried to bevel bottom boards, and use a guard; that he has had experience enough running trim saws to know whether or not they could be guarded, and that in his judgment they could not be guarded. The witness Jones testified for appellee that he had been con-

nected with appellee for sixteen years; that from his experience he did not think a spreader would be any protection in beveling bottom boards; that in his judgment a guard could not be placed over a saw that would be any protection in beveling bottom boards.

Thus it is seen that appellant and the witness Swank testified that the saw could have been guarded, but the witness Swank also testified for appellee in substance that it was not practical to guard the saw; while eight witnesses, (including the factory inspector Swank) testified in substance that it was not a practical thing to guard the saw while beveling bottom boards. In effect appellant says it is practical, and that the saw was not properly guarded, while eight witnesses say in effect that it was not practical to guard the saw.

In the judgment of this court there is a great preponderance of the evidence that the saw was as properly guarded as could be and be operated at all, while the preponderance must be on the other side before appellant could recover.

The jury were fully justified in finding as they did on the evidence they had before them.

Appellant urges that an error occurred in admitting certain portions of the witness Norden's testimony, in that he was allowed to testify that appellant's time would have gone on just the same whether he was removing waste, or whether he was sawing, and that the jury were misled because they might take it to be just as much the duty of appellant to remove waste as to work at the saw, when the duty of removing waste was that of another employee. It should be borne in mind that the evidence is not clear on that point; that it is conflicting; Norden testified that if the scraps were too high the man operating the saw is supposed to take them away himself, to put them back to let himself run. The question was proper enough to draw out the information whether appellant would have lost any time in removing the scraps, at least it could work no harm to appellant.

So far as the testimony of the witness Boos in giving an opinion is concerned, it is not open to the criticism appellant's counsel puts on it. It was not a matter of whether he had worked anywhere else, or how recently he had worked. He testified he had worked for appellee nine years, and was operating a trim saw when he worked there, and used the trim saw mostly for beveling bottom boards. It was a question whether he had the experience on which he based his opinion, and not when and where he got the experience. The objection was made not because it was not shown he had had the necessary experience and knowledge on which to base an opinion, but it was directed to the places where and time when he got it. If he had the experience, no matter where or when he got it, it was competent for him to give an opinion.

Appellants counsel at the close of his rebuttal testimony asked that appellant might show his hand to the jury so that the jury might inspect it. We fail to see how the offer to show the hand was rebuttal evidence. If competent at all, it was a part of appellant's original case; but, in any event it was after appellant had been on the stand and fully testified. He had told the jury in giving his evidence, "And cut this finger across there—cut that one through there," evidently exhibiting his hand while giving his testimony, so that he had the benefit of showing his injuries to the jury, and the doctors had all testified to their character and extent. There was no error in sustaining the objection to this offer. The objection was sustained to the question, "And if you said anything to them about your glasses, was it in reference to dirt being upon them or something of that kind?" This was in rebuttal and we know of no rule that allows the asking of suggestive questions of one's own witness on rebuttal, different from the examination in the first instance. There was no error in sustaining the objection to that question.

As to the instructions given for appellee error is claimed to have been committed in the giving of the fourth, seventh, eighth and ninth instructions given for appellee on the ground that they each require the jury to pass on assumed risk or contributory negligence. If we concede that these instructions are erroneous under the recent holding of the Supreme Court in the case of Streeter v. Western Wheeled Scraper Co., 254 Ill. 244, appellant not only in each count of his declaration alleged he was in the exercise of due care for his own safety, but also put that proposition and the necessity of proving it in the second, fifth and sixth instructions given at his request, and this court can well say as was said by the Supreme Court in McInturff v. Insurance Co. of N. A., 248 Ill. 92. "A party cannot complain of an error in instructions when the same error is found in the instructions offered by the complaining party." The trial court was not required to rule on the question of contributory negligence or of assumed risk until he was requested to instruct the jury, and the court adopted the theory presented by the instructions requested by both plaintiff and defendant. Appellant cannot now be heard to complain.

As to the refusal of appellant's instructions, that assignment of error is by the argument limited to appellant's refused instruction No. 1. That instruction is as follows: "The court instructs the jury that if you believe from a preponderance of the evidence that the defendant failed to guard, shield or protect its said saw as required by the Statute, then the defendant is deprived of the right of interposing the common law defense of assumption of risk." What we have above said of the manner in which appellant alleged his case in his declaration and tried it, and presented it in the instructions he requested, applies with equal force to this refused instruction; and again it might have had a tendency to mislead the jury as to what the Statute required. No other instruction was

given stating the terms of the statute, that is, calling attention to the fact that the statute of this state specifically requires certain things; but the jury were told by other instructions as to certain things specifically enumerated in them what "the Law" required; and that substantially covered all of the requirements of the statute. No error is seen in the refusal of this instruction.

As to the affidavits of appellant and his attorney presented on the hearing of the motion for a new trial, that they were surprised by the testimony offered by appellee, and that two witnesses can now be procured who will testify that saws can be protected with a guard, it only need be said that the record is silent save by said affidavits as to any surprise. Appellant should have asked for a continuance on the ground of surprise if he was surprised, but he did not. Moreover, it is merely cumulative evidence that the affidavits mention. This is not a close case on the question of whether or not the saw could have been guarded. Practically, appellant testified it could have been, and eight witnesses, one of them the factory inspector, testified that it could not. This court would not be justified in reversing the case because appellant produces affidavits that he can now get two witnesses to corroborate him.

Inasmuch as the jury found appellee guilty of no negligence and therefore not liable in any amount of damages, it is not seen how cumulative evidence as to the extent of appellant's injuries was proper to be considered on the hearing of the motion for a new trial.

Appellant also asks a reversal because the court on the hearing of the motion for a new trial should have considered the affidavit to the effect that appellant went into a saloon and afterwards came into the court room under the influence of liquor. If such are the facts, and the jury saw him, and appellant was prej-

172 APPELLATE COURTS OF ILLINOIS.

udiced thereby, it was his own fault, and a new trial should not have been granted on that account.

Seeing no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*